IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SHAWN HINES, )<br>On behalf of himself and all )<br>Others similarly situated )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FDS BANK, DEPARTMENT )<br>STORES NATIONAL BANK )<br>)<br>Defendants. ) | CASE NO. 1:17-cv-02704-ELR<br><br>CLASS ACTION |

## REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Defendants FDS Bank and Department Stores National Bank ("DSNB") file this Reply in further Support of their Motion to Compel Arbitration.

## Introduction

Before discussing Plaintiff's arguments in his Opposition, it is critical to note the facts and law that Plaintiff does not dispute. Plaintiff does not dispute (either by declaration or by his lawyers' unsubstantiated statements) that:

- he applied for a Macy's branded credit card account (the "Account");

- he was provided a Card Agreement for the Account (on two separate occasions, including in connection with one of his billing statements);

- he entered into that Card Agreement by using the Account;

- the Card Agreement contains an Arbitration Agreement;

- the Arbitration Agreement is governed by South Dakota and Federal law (including the FAA);

- his alleged claims fall within the scope of the Arbitration Agreement; or

- the Agreement mandates that all claims must be resolved on an individual basis.

Plaintiff submits no evidence (not even a declaration) challenging these dispositive facts. Instead, he argues only that Defendants have not met their burden of proving the Arbitration Agreement's existence and its application in this case.

That argument is meritless. A quick review of the evidence submitted by Defendants refutes Plaintiff's specious contention:

- "According to DSNB's records, attached as Exhibit 1 is an exemplar copy of the [DSNB] Credit Card Agreement provided to Plaintiff when he opened the Account in October 2011 ('2011 Card Agreement')." Dkt. No. 11-1 ¶ 6.

- "Attached as Exhibit 2 is a copy of the 'Notice of Change in Terms and Right to Opt Out' that was mailed to Plaintiff on or about April 22, 2015 as part of the April 2015 billing statement ('Notice'). The Notice contains an Arbitration [P]rovision." *Id.* ¶ 9.

- "Attached hereto as Exhibit 3 are copies of transaction detail . . . reflecting Plaintiff's use of the Account after the Effective Date." *Id.* ¶ 11.

- "Based on my review of DSNB's records, all of the calls FDS Bank, MCO, and their agents placed to the number at issue related to the Account." Dkt. No. 11-2 ¶ 8.

- "All of the calls placed to Plaintiff by FDS Bank, MCO and their agents were for account-servicing purposes related to the Account. None of the calls were for marketing, solicitation, advertising, or other matters not related to the Account." *Id.* ¶ 9.

This evidence unequivocally establishes that Plaintiff received and was bound by the Card Agreement and the Arbitration Agreement, and that the calls related to servicing the Account and are therefore subject to arbitration.

Plaintiff cannot refute these controlling facts, and, as discussed below, his attempt to avoid them through procedural and non-substantive contentions is unavailing.[1] Accordingly, The Motion to Compel Arbitration should be granted, and this case stayed pending individual arbitration.

## Argument & Citation to Authority

### I.     Standard on a Motion to Compel

Under the Federal Arbitration Act ("FAA"), a district court must compel arbitration if the parties have agreed to arbitrate their dispute. 9 U.S.C. §§ 2, 3. In the Eleventh Circuit, a district court applies a "summary judgment-like standard" when "a party moves . . . to compel arbitration under the FAA." *Burch v. P.J.*

---

[1] Indeed, Plaintiff's attempt to avoid his contractual duty to arbitrate with procedural gamesmanship is inherently improper. *See Amaprop Ltd. v. Indiabulls Fin. Servs.*, 483 F. App'x 634, 635-636 (2d Cir. 2012) ("Since a key benefit of an arbitration agreement is avoidance of court battles (and their associated costs and delays), we agree with the district court that the federal policy of enforcing sophisticated parties' arbitration agreements weighs in favor of fee awards against parties who attempt, without legitimate legal basis, to circumvent arbitration.").

*Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). Thus, a reviewing court must determine: (1) whether the motion shows there is no genuine dispute of material fact regarding the *existence* of an arbitration agreement between the parties and its *applicability* to their dispute; and (2) that the movant is entitled to arbitration as a matter of law. *See Burch*, 861 F.3d at 1346.

A "genuine dispute" is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At its essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

Once the movant discharges its burden, the non-moving party must present evidence sufficient to create a material issue of fact such that a jury could find in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party may not rest on mere allegations or denials, as Plaintiff does here. *Anderson*, 477 U.S. at 256.

Indeed, the party resisting arbitration "bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

4

"As in a traditional summary judgment motion, an examination of substantive law determines which facts are material." *Burch*, 861 F.3d at 1346 (citing *Anderson*, 477 U.S. at 248); *accord Larsen v. Citibank FSB*, 2017 U.S. App. LEXIS 18563, at *9 (11th Cir. Sept. 26, 2017) ("The Supreme Court has made clear that this inquiry is a matter of state contract law."). Accordingly, "just as state law generally governs whether an enforceable contract exists, state law generally governs whether an enforceable 'agreement to arbitrate exists' as well." *Burch*, 861 F.3d at 1346. Once a valid arbitration agreement is shown to exist, a request "to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

Under South Dakota law,[2] the "elements essential to the existence of a contract are: (1) parties capable of contracting; (2) their consent; (3) a lawful

---

[2] South Dakota law governs the interpretation and construction of the 2011 Card Agreement and the Notice (including the Arbitration Clause) because of the agreement's choice of law provision. However, to the extent the Court determines Georgia law applies to this dispute, the relevant law on contracts in Georgia is similar. In Georgia, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." Ga. Code Ann. § 13-3-1. The element of assent requires "(a) a meeting of the

object; and (4) sufficient cause or consideration." S.D. Codified Laws § 53-1-2; *Dlorah, Inc. v. KLE Constr., LLC*, 2017 U.S. Dist. LEXIS 110435, at *3 (D.S.D. July 17, 2017).

## II. The Evidence Establishes Contract Formation and the Arbitration Agreement.

Under the terms of the 2011 Card Agreement and South Dakota and Georgia law, "use" of a credit card is acceptance of a credit card agreement. *See* (Dkt. No. 11-1, Ex. 1, p. 1); S.D. Codified Laws § 54-11-9 ("[t]he use of an accepted credit card . . . creates a binding contract between the card holder and the card issuer."); *Benedict v. State Farm Bank FSB*, 709 S.E.2d 314, 320 (Ga. Ct. App. 2011) (holding that the plaintiff accepted the terms of a card agreement, including the arbitration provision, by using the card.); *accord Bey v. Citi Health Card*, 2017 U.S. Dist. LEXIS 103812, at *9-11 (E.D. Pa. July 6, 2017) (interpreting a credit card arbitration agreement governed by South Dakota law); *Pacanowski v. Alltran Fin., LP*, 2017 U.S. Dist. LEXIS 151643, at *9 (M.D. Pa. Sept. 19, 2017) (same).

Moreover, "[a] credit card issuer may change the terms of any credit card agreement if such right of amendment has been reserved. A credit card issuer shall provide notice of such change, and the right to reject such change, in accordance

---

minds (b) on the essential terms of the contract." *Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357, 1362 (N.D. Ga. 2015).

with, and solely to the extent required by [federal law]." S.D. Codified Laws § 54-11-12.

Here, the Kwiatek Declaration authenticates, as a DSNB business record, the 2011 Card Agreement that was provided to Plaintiff when he opened the Account in October 2011. (Dkt. No. 11-1 ¶ 6.)  Claimant does not dispute this. A copy of the 2011 Card Agreement is attached as Exhibit 1 to the Kwiatek Declaration. (*Id.* Ex. 1.) The Kwiatek Declaration further establishes that the Notice containing the Arbitration Agreement, once again an authenticated business record, was sent to Plaintiff "on or around April 22, 2015," which is attached as Exhibit 2 to the Declaration. (*Id.* ¶ 9 & Ex. 2.)  Plaintiff again does not dispute this, nor does the Plaintiff dispute that he did not reject the changes contained in the notice and used the card after the end of the rejection period, as the billing statements attached to the Kwiatek Declaration demonstrate. (*Id.* ¶¶ 11-12 & Ex. 3.)

This evidence, including DSNB's authenticated business records, is more than sufficient to establish formation of a contract and agreement to the Arbitration Agreement under both South Dakota and Georgia law. S.D. Codified Laws § 54-11-9; *Benedict*, 709 S.E.2d at 320; *See also Lenkowski v. Citibank, N.A.,* No. 16-3472 (M.D. Fla. Apr. 18, 2017) (relying on similar evidence to compel arbitration

over objections nearly identical to those raised by Plaintiff here).[3] Plaintiff, however, misconstrues the holding in *Bazemore v. Jefferson Capital*, 827 F.3d 1325 (11th Cir. 2015) to argue that this evidence is not sufficient. But *Bazemore* is a unique case, involving unique facts that are not present here.

The debt-buyer defendant in *Bazemore* was only able to say that the original creditor **probably** sent a card agreement to the plaintiff, but could not say which version of the card agreement was sent to the plaintiff:

> Mr. Ryan did not assert that the form of Cardholder Agreement that "would have been sent" to Ms. Bazemore was the same as that attached to his declaration. *Indeed, he did not assert even that the form of Cardholder Agreement that "would have been sent" to Ms. Bazemore contained an arbitration clause of any kind, much less the clause found on the form attached to his declaration.*

*Id.* p. 1328 (emphasis added). Here, by contrast, the 2011 Card Agreement sent to Plaintiff is exactly the same as the 2011 Card Agreement attached to the Kwiatek Declaration. (*See* Dkt. No. 11-1 ¶ 6 & Ex. 1.) Moreover, the Notice that contains the Arbitration Agreement is an exact copy of the Notice that was sent to Plaintiff. (*Id.* ¶ 9 & Ex. 2.) Thus, Defendants have proven that the applicable card member agreement was delivered to Plaintiff.

Unable to dispute that fact, Plaintiff argues that use of the word "exemplar" rather than "copy" means that Exhibit 1 to the Kiwatek Declaration is not identical

---

[3]  A true and correct copy of this decision is attached as Exhibit 1.

to the 2011 Card Agreement sent to Plaintiff. (Dkt. No. 14 p. 6.) The frivolity of Plaintiff's argument is emphasized by the fact that his only support for this argument is a Google search (Dkt. No. 14, p. 6 n.1), and that the testimony is that it is an "exemplar copy." Regardless, there is no factual distinction between "exemplar" and "copy" and courts regularly compel arbitration based on "exemplar" agreements. *See, e.g., Lenkowski,* No. 16-3472 (rejecting identical arguments and compelling arbitration); *Snow v. Citibank, N.A.*, No. 5:15-CV-59-FL, 2015 U.S. Dist. LEXIS 23624 at *8-9. (E.D.N.C. Jan. 20, 2015); *Drozdowski v. Citibank, Inc.*, No. 2:15-CV-2786-STA-CGC, 2016 WL 4544543, at *4 (W.D. Tenn. Aug. 31, 2016).

Plaintiff's argument that the phrase "on or about April 22, 2015" is "insufficient under *Bazemore*" is similarly mistaken (and misleading). Plaintiff does not dispute the fact that he received the change in terms containing the Arbitration Agreement and *Bazemore* says nothing about the sufficiency of the phrase "on or about" (and Plaintiff does not cite to anything in *Bazemore* suggesting it is insufficient). Indeed, the phrasing "on or about" is frequently used in legal documents and is particularly appropriate when addressing mailing because idiosyncrasies can cause an item of mail sent on a certain day to enter the postal system a short time later. Regardless, a witness may testify from business

records that a letter was sent, even if the witness does not attach a document showing the date on which it was set. *See Versey v. Citizens Trust Bank*, 306 Ga. App. 479, 481 (2010).

Thus, the use of the phrase "on or about" rather than "on" is simply of no legal or factual significance. The Declaration establishes that it was sent to Plaintiff, and Plaintiff continued using the card for months after it was sent. (Dkt. No. 11-1 ¶¶ 9 -12 & Exs. 2-3.) And again, critically, Plaintiff never denies that he received the Notice – not even in an unsupported statement in his brief.

### III. Plaintiff's Claims Arise Out of the 2011 Card Agreement, As Amended by the Notice.

FDS Bank (the Defendant that placed the calls) testified that "All of the calls placed to Plaintiff by FDS Bank, MCO and their agents were for account-servicing purposes related to the Account. None of the calls were for marketing, solicitation, advertising, or other matters not related to the Account." (Dk.t No. 11-2 ¶ 9.) Plaintiff – the alleged recipient of the calls – does not dispute that fact. He does not claim that the calls had some other purpose.

Instead, he again seeks to avoid his contractual obligations by baldly claiming Defendants have not proven that the claims relate to the account and blindly citing to an irrelevant case in which one of his counsel is the named plaintiff, *Holcombe v. DirecTV, LLC*, 159 F. Supp. 2d 1337 (N.D. Ga. 2016).

The *Holcombe* court denied a motion to compel arbitration because the plaintiff put forth actual evidence that the purpose of the calls was not servicing related "but were for 'advertising, marketing, or other purposes' soliciting Plaintiff to enter into a new account." *Id.* pp. 1341, 1344.

Here, by contrast, Defendants testified that 100% of the calls were for account-servicing purposes for the Account and not "for marketing, solicitation, advertising, or other matters not related to the Account." (Dk.t No. 11-2 ¶ 9.) Unlike his counsel in *Holcombe*, Plaintiff has presented no evidence (or even allegation) to refute that evidence. Instead, he points to cases involving unrelated torts or separate contracts, (Dkt. No. 14 pp. 12-13), and argues that the Delgado Declaration – submitted under oath – is "not probative" of the issue. (*Id.* p. 14.) Under Eleventh Circuit law, however, a declarant is permitted to testify to information gained through familiarity with a company's practices and a review of its business records. *See Chadwick v. Bank of Am., N.A.,* 616 F. App'x 944, 948 n.2 (11th Cir. 2015) ("Paragraph 18 simply proffers May's personal knowledge, *acquired after reviewing BANA's business records and files*, that BANA did not reject Chadwick's tender or tell him it would not accept tender. Such testimony *is admissible*[.]" Emphasis added).

Here, as in *Chadwick*, Delgado obtained personal knowledge of the purpose of the calls "after reviewing [DSNB's] business records and files." *Id.*; (Dkt. No. 11-2 ¶¶ 8-9.) "Such testimony is admissible," *Chadwick,* 616 F. App'x at 948 n.2 and, at a minimum, is sufficient to shift the burden to Plaintiff to submit competent evidence that the calls at issue were not for account-servicing purposes.

## IV. Defendants' Declarations Are Admissible

Recognizing that he cannot overcome – or even dispute – the evidence submitted by Defendants, Plaintiff also makes sweeping accusations that the Declarations are inadmissible hearsay because they do not attach documents Plaintiff would like to receive before the case is inevitably compelled to arbitration (the declarations do not refer to the documents Plaintiff claims are missing, Plaintiff just baldly claims they should be attached because he wants them).[4]

Plaintiff's objection lacks merit. As the Eleventh Circuit explained in *Chadwick*, "there is a fine line between hearsay – i.e., testimony that recounts what was spoken by an out-of-court declarant – and testimony about matters within a witness's personal knowledge." *Id.* (quotation marks omitted). Personal

---

[4] Defendants were willing to provide, and did provide, information to Plaintiff pertinent to the arbitration issue. Plaintiff, however, would not consider stipulating to arbitration unless Defendants also provided merits discovery, which Defendants refused. Plaintiff's argument now is nothing more than an attempt to fabricate a basis for that improper discovery outside of the arbitral forum.

"knowledge[] acquired after reviewing . . . business records and files" is not hearsay." *Id.*

"As the case law makes clear, [a corporate declarant] may use business records and still possess personal knowledge under Rule 56. . . . Thus, any additional knowledge gleaned from [declarant's] review of the relevant business records fits within the parameters of Rule 56(c)(4)." *United States v. Nugent*, No. 5:16-cv-380-JMH, 2017 WL 4249775 at *4 (E.D. Ky. Sept. 25, 2017). Indeed, "[r]eview of business records can supply personal knowledge 'even if it were shown that [the affiant] did not have independent personal knowledge.'" *Id.* (quoting *Stevenson v. Brennan,* No. 06-CV-15182, 2017 WL 714357, at *5 (E.D. Mich. Feb. 23, 2017)). Several courts have applied this rule, which the Eleventh Circuit followed in *Chadwick*.[5] *See also, Lenkowski,* No. 16-3472 (rejecting

---

[5] *Daniel v. West Asset Mgmt., Inc.,* No. 11-10034, 2011 WL 5142980, at *9 (E.D. Mich. Oct. 28, 2011) (holding that an affiant's review of business records satisfied Rule 56's personal knowledge requirement); *Orrand v. Keim Concrete Pumping, Inc.,* NO 2:08-CV-1046, 2010 WL 3447647, at *8 (S.D. Ohio Aug. 30, 2010) ("an affiant may testify to acts that she did not personally observe but which are described in business records."); *Supplier's City SA De, CV v. EFTEC N. Am., LLC*, No. 07-12694, 2010 WL 538427, at *7 (E.D. Mich. Feb 10, 2010) ("Personal knowledge can come from review of the contents of business records"); *Kelecseny v. Chevron USA, Inc.*, NO. 08-61294-CIV-ALTONAGA, 2009 WL 10667062, at *6 (S.D. Fla. June 4, 2009) ("personal knowledge, as innumerable decisions from the federal courts make clear, may be gleaned from a review of records pertinent to a given case."); *AT & T Corp. v. Overdrive, Inc.,* No: 1:05-CV-1904, 2006 WL 3392746, at *2 (N.D. Ohio Nov. 21, 2006) ("Personal knowledge can come from

argument that Kwiatek's declaration lacks personal knowledge and constitutes inadmissible hearsay).

Plaintiff's claim that the testimony establishing that DSNB sent the 2011 Card Agreement and Notice to Plaintiff and that the calls at issue related to account servicing are hearsay fails for the same reason. Kwiatek testified that both documents were sent based on her personal knowledge, acquired in part from her review of business records, and not from merely reciting statements contained on a business record. (*See* Dkt. No. 11-1.) Likewise, Delgado testified that the calls related to account servicing and not some other purpose based on his personal knowledge, acquired in part from her review of business records, and not from merely reciting statements contained on a business record. (*See* Dkt. No. 11-2.) Because these statements were all made based on personal knowledge, they are admissible under *Chadwick* and the other cases cited above.

---

review of the contents of business records"); *Washington Cent. R.R. Co., Inc. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1352-53 (E.D. Wash. 1993) ("[b]ased on personal knowledge of the files and records, a declarant may testify to acts that she or he did not personally observe but which are described in the record.").

## **Conclusion**

For the reasons set forth above, Defendants respectfully request that this Court grant their Motion to Compel Arbitration and stay this case pending resolution of arbitration.

Respectfully submitted this 3rd day of November, 2017.

> By: */s/ Daniel L. Delnero*
> Daniel L. Delnero
> Ga. Bar No. 347766
> delnerod@ballardspahr.com
> BALLARD SPAHR LLP
> 999 Peachtree Street, Suite 1000
> Atlanta, GA 30309
> Telephone: 678.420.9300
> Facsimile: 678.420.9301
>
> *Counsel for Defendant Department Stores National Bank*

## **CERTIFICATION OF COMPLIANCE WITH L.R. 5.1B**

I hereby certify that the foregoing has been computer processed with 14 point New Times Roman font in compliance with the United States District Court for the Northern District of Georgia Local Rule 5.1B.

Dated:  November 3, 2017          By: */s/ Daniel L. Delnero*
                                  Daniel L. Delnero
                                  Ga. Bar No. 347766
                                  delnerod@ballardspahr.com
                                  BALLARD SPAHR LLP
                                  999 Peachtree Street, Suite 1000
                                  Atlanta, GA 30309
                                  Telephone: 678.420.9300
                                  Facsimile: 678.420.9301

                                  *Counsel for Defendant Department Stores National Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I filed the foregoing REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION with the Clerk of Court using the CM/ECF system which will automatically send notification of this filing to all counsel of record.

Dated: November 3, 2017.

By: */s/ Daniel L. Delnero*
Daniel L. Delnero
Ga. Bar No. 347766

*Counsel for Defendant Department Stores National Bank*